# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BEAZER HOMES USA, INC.,

                 Plaintiff,

      - *vs.* –

U.S. BANK NATIONAL
ASSOCIATION and U.S. BANK
TRUST NATIONAL ASSOCIATION,

               Defendants.

Civil Action
File No. 1:07-CV-2006-JEC

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff Beazer Homes USA, Inc., ("Beazer" or "Plaintiff"), files this Amended Complaint for Declaratory Judgment and Injunctive Relief (the "Amended Complaint") in accordance with 28 U.S.C. § 2201 seeking the entry of a final order adjudicating its rights and obligations pursuant to the terms of certain corporate indentures. In particular, Beazer seeks this Court's construction of a contract obligation that requires Beazer to deliver certain reports, including quarterly financial reports on Form 10-Q, to a trustee, either Defendant U.S. Bank National Association or Defendant U.S. Bank Trust National Association (collectively, "Trustee" or "U.S. Bank") within 15 days *after* Beazer actually files those reports with the Securities and Exchange Commission (the

"SEC").  In addition, Beazer asks the Court to enter a judgment declaring that Beazer's delay in filing the Form 10-Q with the SEC and in providing a copy of its Form 10-Q to the Trustee does not constitute a violation of the Trust Indenture Act

Beazer asks this Court to enjoin the Trustee from taking any further action to claim a default or to accelerate Beazer's debt based on the Trustee's plainly erroneous interpretation of the indenture agreements.

In the days since Beazer filed its initial Complaint in this action on August 21, 2007, the Trustee has issued purported default notices for the indentures listed in Beazer's Complaint.  In addition, the Trustee has issued another purported default notice for an additional indenture that does not even include the contested covenant to deliver SEC filings to the Trustee and, therefore, was not included in Beazer's initial Complaint.  In certain of these Notices of Default, the Trustee has indicated that either U.S. Bank National Association or U.S. Bank Trust National Association may be the entity that acts as the trustee for the respective bondholders.  To ensure that this Court's resolution of this dispute will govern all the contested indentures and both of the possible Trustee entities, Beazer files this Amended Complaint and shows this Court as follows:

## PRELIMINARY STATEMENT

1.     Beazer brings this action to prevent irreparable harm to Beazer and its shareholders at the hands of the holders of certain of its debt securities (the "Noteholders"), acting through the Trustee on the indentures pursuant to which these debt securities were issued.

2.     The relevant facts are straightforward.  After discovering that certain accounting entries in former periods may have been misstated, Beazer made the decision to delay filing with the SEC its Form 10-Q for the period ended June 30, 2007.  The discovery of these accounting entries arose in the course of an independent internal investigation being conducted by the Audit Committee of Beazer's Board of Directors into Beazer's mortgage origination business.  The Audit Committee has retained independent legal counsel which, in turn, has retained independent forensic accountants, to assist with the investigation.

3.     Because Beazer chose to delay filing the Form 10-Q, Beazer filed a Form 8-K with the SEC on August 15, 2007, which disclosed to the market, including the Trustee and the Noteholders, detailed information about its financial performance for the relevant period.

4.     Pursuant to an information delivery requirement in certain of the relevant indentures, Beazer timely delivered the August 15, 2007 Form 8-K to

the Trustee and the Noteholders within 15 days of Beazer's filing with the SEC.  In fact, Beazer has timely delivered under the terms of the indentures every Form 10-Q report filed with the SEC.  Moreover, Beazer has never missed a payment under any of the applicable indentures.

5.     Nevertheless, the Trustee and the Noteholders have attempted to seize upon Beazer's decision to delay filing its Form 10-Q with the SEC and de-clared a purported default under the indentures.  If the purported default is not remedied within the 60-day cure period, the next step will surely be for the Trustee and the Noteholders to seek accelerated full repayment of approximately $1.5 bil-lion in outstanding Beazer debt under the indentures.  The motivation for this effort is clear: many of the Noteholders, including various hedge funds and other oppor-tunistic investors, have purchased Beazer's bonds at depressed prices in the market and are now improperly seeking to secure a windfall by demanding accelerated re-payment in full.

6.     The campaign by the Trustee and the Noteholders must fail. Indeed, the fundamental premise of that campaign — that Beazer's delay in filing with the SEC constitutes a breach of its indentures — is contradicted by the unam-biguous terms of those indentures.  Specifically, Beazer's obligation to deliver cer-tain reports, including Form 10-Q's, arises only *after* those reports are actually

filed with the SEC.  That is, the indentures only obligate Beazer to deliver copies of what has been first filed with the SEC, within 15 days after that filing.  The indentures impose no requirement for Beazer to file those reports with the SEC by any particular date.

7.     Acceleration of Beazer's debt would cause the company significant and irreparable harm.  Moreover, even the threatened assertion of an acceleration right would result in (and has already resulted in) such harm to Beazer, its reputation in the market, and its shareholders.  For example, Beazer's credit rating has been downgraded by the major rating agencies, citing the covenants and the uncertainty over the default issue.

8.     To prevent further harm, and to put an end to its dispute with the Trustee, Beazer therefore seeks:

- A declaration that Beazer is not required under the indentures to provide the reports specified therein, including specifically its Form 10-Q, until fifteen (15) days after it files those reports with the SEC;

- A declaration that Beazer has not violated the Trust Indenture Act, 15 U.S.C. § 77nnn, as a result of the filing delay; and

- An injunction prohibiting the Trustee from taking any further action towards accelerating repayment under the Beazer Indentures or Notes as a result of Beazer's delay in filing its Form 10-Q for the period ended June 30, 2007.

## FACTUAL ALLEGATIONS

*The Parties*

9.    Plaintiff Beazer's primary business is the design, construction, and sale of homes throughout the United States.  Beazer is a corporation organized under the laws of Delaware with its principal place of business at 1000 Abernathy Road, Suite 1200, Atlanta, Georgia.  Beazer's shares trade on the New York Stock Exchange.

10.    Defendant U.S. Bank National Association is a national banking association that, upon information and belief, has its principle place of business in Minnesota. U.S. Bank National Association maintains an office in Atlanta, Georgia and regularly conducts business in Georgia.  U.S. Bank National Association is the trustee for certain of the indentures to which the current dispute relates.

11.    Defendant U.S. Bank Trust National Association is a national banking association that, upon information and belief, has its principal place of business in Minnesota.  Indeed, the May 2001 Indenture described below identifies

-6-

St. Paul Minnesota as the location of U.S. Bank Trust National Association's principal administration of its corporate trust business. Upon information and belief, U.S. Bank Trust National Association also maintains an office in Atlanta, Georgia and regularly conducts business in Georgia. U.S. Bank Trust National Association is the trustee for certain of the indentures to which the current dispute relates.

***Jurisdiction and Venue***

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Defendants have asserted the right to bring a coercive action against Plaintiff under the Trust Indenture Act, 15 U.S.C. § 77nnn. Each of Defendants' purported Notices of Default asserts that Beazer's delay in filing its Form 10-Q with the SEC and providing the Form 10-Q to the Trustee constitute a "violation of the Trust Indenture Act, including without limitation, Section 314(a)(1) thereof . . . ."

13.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship among the parties. The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (c).

*The Beazer Indenture Agreements*

15.     As is common for large publicly-owned companies, Beazer has from time-to-time issued debt securities pursuant to certain indentures.  The indentures, and issued securities, at issue here include:

- A May 21, 2001 Indenture (the "May 2001 Indenture"), pursuant to which Beazer issued a May 21, 2001 First Supplemental Indenture (the "May 2001 First Supplemental Indenture").  Pursuant to the May 2001 First Supplemental Indenture Beazer issued a series of debt securities designated as its 8-5/8% Senior Notes due 2011 in the aggregate principal amount of $200 million.

- An April 17, 2002 Indenture (the "April 2002 Indenture"), pursuant to which Beazer has issued a number of supplemental indentures, including:

    (a)     An April 17, 2002 First Supplemental Indenture (the "April 2002 First Supplemental Indenture"), pursuant to which Beazer issued a series of debt securities designated as its 8-3/8% Senior Notes due 2012 in the aggregate principal amount of $350 million.

    (b)     A November 13, 2003 Second Supplemental Indenture (the "November 2003 Second Supplemental Indenture"), pursuant to which Beazer issued a series of debt securities designated as its 6-1/2% Senior Notes due 2013 in the aggregate principal amount of $200 million.

     (c)     The April 2002 Indenture was further supplemented by Third and Fourth Supplemental Indentures pursuant to which certain additional subsidiaries of Beazer became guarantors of the 2012 and 2013 notes.

     (d)     A June 8, 2005 Fifth Supplemental Indenture (the "June 2005 Fifth Supplemental Indenture"), pursuant to which Beazer issued a series of debt securities designated as its 6-7/8% Senior Notes due 2015 in the aggregate principal amount of $350 million.

     (e)     The April 2002 Indenture was further supplemented by Sixth and Seventh Supplemental Indentures pursuant to which certain additional subsidiaries of Beazer became guarantors of the 2012, 2013, and 2015 Notes.

     (f)     A June 6, 2006 Eighth Supplemental Indenture (the "June 2006 Eighth Supplemental Indenture"), pursuant to which Beazer issued a series of debt securities designated as its 8.125% Senior Notes due 2016 in the aggregate principal amount of $275 million.

- A June 8, 2004 Indenture (the "June 2004 Indenture"), pursuant to which Beazer issued a series of debt securities designated as its 4-5/8% Convertible Senior Notes due 2024 in the aggregate principal amount of $180 million.

     16.     The May 2001 First Supplemental Indenture, April 2002 First Supplemental Indenture, November 2003 Second Supplemental Indenture, June 2005 Fifth Supplemental Indenture, and June 2006 Eighth Supplemental Indenture

and June 2004 Indenture are referred to collectively as the "Beazer Indentures."
The debt securities issued pursuant to the Beazer Indentures are referred to collectively as the "Notes."  For illustrative purposes, the May 2001 First Supplemental Indenture is attached hereto as Exhibit A.  In rough figures, the amount of debt currently outstanding under these instruments is approximately $1.5 billion.

***The Applicable Covenants***

      17.    Each of the Beazer Indentures—with the exception of the June 2004 Indenture—contains an identical covenant pursuant to which Beazer is to deliver to the Trustee copies of reports that it has first filed with the SEC.  This covenant (the "Delivery Covenant") provides in relevant part that:

> As long as any of the Notes are outstanding, the Company [Beazer] shall deliver to the Trustee and mail to each Holder within 15 days *after the filing of the same with the Commission* copies of the quarterly and annual reports and of the information, documents and other reports with respect to the Company and the Subsidiary Guarantors, if any, which the Company and the Subsidiary Guarantors may be required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act. . . .  The Company and each Subsidiary Guarantor shall also comply with the other provisions of Section 314(a) of the Trust Indenture Act.  (emphasis added)

The June 2004 Indenture does not contain a Delivery Covenant.

      18.    Thus, 15 days after Beazer files, for example a Form 10-Q, with the SEC, Beazer is required to deliver a copy of that report under the Indentures.

Pursuant to the Delivery Covenant, Beazer has in fact provided the Trustee with all Form 10-Q's first filed with the SEC within the fifteen day period.

19.    Nothing in this covenant requires Beazer to file its reports with the SEC by a date certain.  Instead, the Delivery Covenant obligates Beazer to provide reports (*i.e.*, those that Beazer "may be required to file with the Commission") within fifteen days after Beazer actually files them with the SEC.  It does not require Beazer to file those reports with the SEC at any particular time or in any particular manner.

### *Beazer's Disclosure of Information to the Market*

20.    On August 10, 2007, Beazer filed with the SEC a Form 12b-25 Notification Of Late Filing (attached hereto as Exhibit B) in which it disclosed, among other things, that it would be delayed in filing its Form 10-Q for the quarter ended June 30, 2007.  Beazer informed the market that it had "discovered that its former Chief Accounting Officer may have caused reserves and other accrued liabilities, relating primarily to land development costs and costs to complete houses, to have been recorded in prior accounting periods in excess of amounts that would have been appropriate under generally accepted accounting principles." (Exhibit B at p. 3)

21.    Beazer further disclosed:

[A]t this time, the Company does not believe that the amounts at issue
with respect to these reserves and accrued liabilities during the quar-
terly and nine month periods ended June 30, 2006 and 2007 are quan-
titatively material.  In addition, at present, the Company does not be-
lieve that the resolution of these issues will result in an adjustment to
the Company's previously reported cash position.  (Exhibit B at p. 3)

22.     As part of its efforts to keep the market — including the Trus-
tee and the Noteholders — informed, on August 15, 2007 Beazer filed a Form 8-K
to which it attached its Unaudited Condensed Consolidated Financial Statements
for the quarterly and nine month periods ending June 30, 2007 and 2006 and a re-
lated management's discussion and analysis of Beazer's financial condition and
results of operations.  This filing is attached hereto as Exhibit C.  These financial
statements and analyses provide detailed information about Beazer's economic and
financial condition.  Beazer had previously provided similar, though less detailed,
information to the market in a July 26, 2007 press release and related Form 8-K
filed with the SEC.

23.     In short, despite Beazer's delay in filing the Form 10-Q, Beazer
has taken a number of steps to provide meaningful information to the market in
general and the Trustee and Noteholders in particular.

*The Position of the Trustee and the Noteholders*

24.    Nevertheless, the Trustee and the Noteholders have commenced a campaign that seeks to capitalize on Beazer's delay in filing the Form 10-Q and force the accelerated repayment of approximately $1.5 billion in debt.

25.    For example, on August 16, 2007, the Trustee made clear its position that, contrary to its express language, the Delivery Covenant requires Beazer to file its Form 10-Q by a date certain.  Indeed, the Trustee demanded that "The 10Q filing is due to us August 24th."  The August 24th date represents 15 days from the date Beazer was to file its Form 10-Q but for the delay.

26.    On September 6, 2007, the Trustee sent virtually identical purported Notices Of Default to Beazer's corporate offices in Atlanta referencing each of the May 2001 Indenture, May 2001 First Supplemental Indenture, April 2002 Indenture, April 2002 First Supplemental Indenture, November 2003 Second Supplemental Indenture, June 2005 Fifth Supplemental Indenture, and June 2006 Eighth Supplemental Indenture.

27.    On September 7, 2007, the Trustee sent a purported Notice Of Default to Beazer's corporate offices in Atlanta referencing the June 2004 Indenture even though this indenture does not contain a Delivery Covenant.

28.     Each of the purported Notices Of Default identified in Paragraphs 26 and 27 above state that Beazer's delay in filing the Form 10-Q with the SEC and in delivering the Form 10-Q to the Trustee "will become an Event of Default if it continues for a period of 60 days after receipt of this Notice of Default without being remedied." Each of the purported Notices also asserts that such delays constitute a "violation of the Trust Indenture Act, including, without limitation, Section 314(a)(1) thereof ... ." The purported Notices of Default also cite to provisions in the indentures that are not applicable.

29.     The motivation for the campaign is clear: many of the Noteholders, including a number of "vulture investors", have scooped up Beazer's bonds at discounted prices in light of both the dramatic and well-publicized downturn in the credit markets and Beazer's previous disclosures. Those investors now seek to make a quick profit by attempting to accelerate full repayment.

30.     As detailed above, the position of the Trustee and the Noteholders is inconsistent with the plain language of the Delivery Covenant. Beazer is not obligated to provide its Form 10-Q for the period ended June 30, 2007 because that report has not yet been filed with the SEC.

31.    The position of the Trustee and the Noteholders is also inconsistent with the purpose of such covenants — to ensure that borrowers provide their lenders with timely information about their financial condition.  In fact,

(a)    Throughout the life of the Beazer Indentures, Beazer has timely delivered all Form 10-Q's it has filed with the SEC;

(b)    Beazer has provided to the Trustee and the Noteholders detailed financial information about the period covered by the delayed Form 10-Q, including in its Form 8-K filed on August 15, 2007 and in a July 26, 2007 press release; and

(c)    Beazer disclosed and explained why it has not yet filed its Form 10-Q.

32.    Beazer's delay has not resulted in any economic damage to the Trustee or Noteholders, or otherwise rendered them insecure in their investments. Indeed, Beazer has made all payments due in accordance with the Beazer Indentures.

***The Irreparable Harm To Beazer***

33.    The assertion of the Trustee and the Noteholders that the Delivery Covenant required Beazer to provide them with its Form 10-Q by August 24, 2007 and the Trustee's subsequent delivery of the purported Notices Of Default are causing, and will continue to cause, irreparable harm to Beazer.

-15-

34.    For example, before the purported Notices Of Default were even delivered to Beazer by the Trustee, two leading credit rating agencies — Standard & Poor's and Moody's — announced that they were placing Beazer's credit ratings under review for downgrade.  Among other things, the ratings agencies referenced the Delivery Covenants and the concern that Beazer's filing delay could lead the Trustee and/or the Noteholders to claim a default under the Beazer Indentures.  Shortly thereafter, Moody's downgraded Beazer, and Beazer remains on watch by Standard & Poor's.  Another rating agency, Fitch, has also downgraded Beazer's credit rating.

35.    Other market analysts, including, for example, Wachovia, have cited the uncertainty about the possibility of acceleration in their reports to investors.  Investors look to these reports when pricing securities, such as Beazer's stock, and in deciding whether to provide capital to companies such as Beazer in the first place.

36.    The reports issued by the credit rating agencies and other analysts have had a negative impact on Beazer's reputation in the marketplace.

37.    Moreover, under various "cross-default" provisions in the Beazer Indentures and other credit agreements, acceleration (or the ability to accelerate) by the Trustee or any group of Noteholders under any of the Beazer Inden-

-16-

tures could require Beazer to repay all of the amounts borrowed under the inden-

tures (approximately $1.5 billion) and perhaps additional amounts borrowed.

Payment of this staggering amount of money at once, and prior to the maturity date

of the Notes, would necessarily and unconscionably divert funds away from

Beazer's business operations. Even the Trustee and Noteholders' threat of accel-

eration is causing Beazer irreparable harm, and the Trustee's delivery of the pur-

ported Notices Of Default, make clear their intention to follow through on that

threat.

### FIRST CAUSE OF ACTION

### (Declaratory Judgment Under 28 U.S.C. § 2201)

38.    Plaintiff repeats and realleges each and every allegation set

forth in Paragraphs 1 through 37 as though fully set forth herein.

39.    The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in

pertinent part that "[i]n a case of actual controversy within its jurisdiction ... any

court of the United States ... may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could

be sought."

40.    Where applicable, the Delivery Covenant requires Beazer to

provide certain reports (*i.e.*, those that Beazer "may be required to file with the

Commission") within fifteen (15) days after Beazer files those reports with the SEC.

41.     The Trustee has served Beazer with purported Notices Of Default asserting that Beazer's delay in filing its Form 10-Q constitutes a Default under the Beazer Indentures.  That report has yet to be filed with the SEC and thus cannot yet be due under the Delivery Covenants in the relevant Indentures.  The dispute between the parties on this issue presents a substantial controversy that continues to date.

42.     The acceleration campaign of the Trustee and the Noteholders is causing and will continue to cause significant uncertainty between the parties and in the public markets.  For as long as this uncertainty continues, Beazer and its shareholders will continue to suffer damage in an amount that cannot be quantified. Beazer has no adequate remedy at law.

43.     Accordingly, Beazer is entitled to a judgment declaring that, under the Beazer Indentures, Beazer is not obligated to provide the reports specified in the Delivery Covenant (*i.e.*, those that Beazer "may be required to file with the Commission"), including specifically its Form 10-Q for the period ended June 30, 2007, until fifteen (15) days after such reports are filed with the SEC.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment Under 28 U.S.C. § 2201)

44.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 43 as though fully set forth herein.

45.     The Trustee has served Beazer with purported Notices Of Default each of which asserts that Beazer's delay in filing the Form 10-Q with the SEC and in delivering the Form 10-Q to the Trustee constitutes a "violation of the Trust Indenture Act, including, without limitation, Section 314(a)(1) thereof ... ." The Trust Indenture Act does not require Beazer to file the Form 10-Q with the SEC and does not specify the time within which Beazer is required to deliver its Form 10-Q to the Trustee.  The dispute between the parties on this issue presents a substantial controversy that continues to date.

46.     Accordingly, Beazer is entitled to a judgment declaring that its delay in filing the Form 10-Q with the SEC and in providing a copy of its Form 10-Q to the Trustee does not constitute a violation of the Trust Indenture Act.

## THIRD CAUSE OF ACTION

### (Injunctive Relief)

47.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 46 as though fully set forth herein.

48.     The Trustee's demand and delivery of the purported Notices Of Default to Beazer, and the recent actions of the Noteholders, have revealed a concerted effort on their parts to attempt to accelerate repayment on the Notes.  If not enjoined, the Trustee will take further steps to effect such acceleration.

49.     These acceleration efforts are based on an erroneous reading of the Delivery Covenant and an erroneous interpretation of the Trust Indenture Act, as detailed herein.

50.     The effort by the Trustee to accelerate the notes is causing, and will continue to cause, irreparable harm to Beazer and its shareholders.  Beazer has no adequate remedy at law.

51.     The benefits and protections afforded Beazer, a publicly-traded company, and its shareholders outweigh any harm to the Trustee from issuance of the injunction demanded herein.

WHEREFORE, Plaintiff demands a trial by jury on any disputed issues of fact and final judgment as follows:

(a)    declaring that under the Beazer Indentures Beazer is not obligated to provide the reports specified in the Delivery Covenant (*i.e.*, those that Beazer "may be required to file with the Commission"), including specifically its Form 10-Q for the period ended June 30, 2007, until fifteen (15) days after those reports are filed with the SEC;

(b)    declaring that Beazer's delay in filing the Form 10-Q with the SEC and in providing a copy of its Form 10-Q to the Trustee does not constitute a violation of the Trust Indenture Act;

(c)    enjoining the Trustee from taking any further action in furtherance of declaring a default or accelerating repayment under the Beazer Indentures or Notes as a result of Beazer's delay in filing its Form 10-Q for the period ended June 30, 2007; and

(d)    granting Plaintiff such other and further relief as the Court deems just and proper.

This 10th day of September 2007,

Respectfully submitted,

**/s/Ronan P. Doherty**
Emmet J. Bondurant
Georgia Bar No. 066900
bondurant@bmelaw.com
Ronan P. Doherty
Georgia Bar No. 224885
doherty@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-4100 (Telephone)
(404) 881-4111 (Facsimile)

*Of Counsel*

David G. Januszewski*
Adam Zurofsky*
David R. Owen*
Jason A. Otto*
M. Justin Lubeley*

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000 (Telephone)
(212) 269-5420 (Facsimile)

*Applications for *Pro Hac Vice*
Admission Pending

*Attorneys for Plaintiff*
*Beazer Homes USA, Inc.*

-22-

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I electronically filed the forego-

ing **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND**

**INJUNCTIVE RELIEF** with the Clerk of Court using the CM/ECF system which

will automatically send e-mail notification of such filing to the following attorneys

of record:

> Donald A. Loft
> dloft@mmmlaw.com

I further certify that I have served by United States Postal Service the docu-

ment and Notice of Electronic Filing on the following non-CM/ECF participants,

as follows:

Frank W. DeBorde                    Ira H. Goldman
MORRIS, MANNING & MARTIN, LLP       Julie A. Manning
1600 Atlanta Financial Center       SHIPMAN & GOODWIN LLP
3343 Peachtree Road, NE             One Constitution Plaza
Atlanta, Georgia  30326             Hartford, Connecticut 06103

> **/s/Ronan P. Doherty**
> Ronan P. Doherty
> Georgia Bar No. 224885